## Commonwealth v. Von Foerster, Appellant.

*Criminal law—Larceny—Money taken with consent of the owner —False pretense.*

It is an indispensable element of larceny that the property be taken without the will of the owner. When the owner intended to part with the property in the thing delivered, the transaction is not larceny even though fraudulent means may have been used to induce him to part with it. Where he delivered the possession absolutely, and possession was taken with the understanding that the one so receiving might apply it to his own use, it is not larceny.

A conviction of larceny will not be sustained, where the evidence shows that the defendant obtained the money, alleged to be stolen, by means of the sale of a lot in a building operation for which he gave a deed, and where the prosecutor admitted that he intended to part with his money upon receiving title to the property.

Argued May 2, 1922. Appeal, No. 113, April T., 1922, by defendant, from judgment and sentence of Q. S. Allegheny County, April T., 1920, No. 437, on verdict of guilty in the case of Commonwealth of Pennsylvania v. C. H. Von Foerster. Reversed.

Indictment for larceny. Before BELL, P. J., 46th Judicial District, specially presiding.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty on which judgment of sentence was passed. Defendant appealed.

*Errors assigned,* among others, were various rulings on evidence, the charge of the court, and refusal to direct a verdict of not guilty.

*J. A. Langfitt,* of *Langfitt & Langfitt,* for appellant.— If the owner willingly parts with the property, there is no larceny: Com. v. Mulroy, 170 Mass. 103; Welsh v. People, 17 Ill. 339; Kelly v. State, 26 Ohio St. 15; Com. v. Eichelberger, 119 Pa. 264; Com. v. Barrett, 28 Pa. Superior Ct. 115.

*H. R. Phillips,* Assistant District Attorney, and with him *Harry H. Rowand,* District Attorney, for appellee, cited: Com. v. Dehle, 42 Pa. Superior Ct. 308; Com. v. Hutchinson, 6 Pa. Superior Ct. 405.

OPINION BY HENDERSON, J., July 13, 1922:

The appellant was convicted of the larceny of money from Frank Gregor. It was not proved nor contended by the Commonwealth that the money was taken against the will of the owner. The allegation was that it was procured by artifice and misrepresentation, and that although voluntarily paid to the defendant, the title thereto did not pass because of the alleged misrepresentations. A brief reference to the facts is necessary to make clear the theory on which the prosecution proceeded. In 1918 the defendant was engaged in the promotion of the sale of lots in a tract of land containing 115 acres, owned or controlled by him on the east side of the Delaware River in New Jersey, at a place about 16 miles south of the City of Camden and between the towns of Paulsboro and Gibbstown near the Delaware River. The location was about opposite Hog Island in the Delaware. Numerous manufacturing enterprises were located at that time on both sides of the river below Camden and Philadelphia, principally devoted to the

manufacture of supplies used in the prosecution of the war. The defendant's project involved the laying out of the tract in lots, the construction of sewers, streets and sidewalks, the planting of trees, and other developments preliminary to the erection of dwellings by purchasers of the lots. The defendant is an Austrian who came to this country before the declaration of war. He spoke the German, Croatian and other languages of Central Europe. The prosecuting witness is a Croatian who lived at Woodlawn in Beaver County, Pennsylvania, where he and a large number of natives of Austria and adjacent nations were employed. At the solicitation of one of his fellow countrymen, Gregor became interested in the development enterprise and met the defendant at the latter's office in Pittsburgh, where he made a payment for an option on one of the lots. He subsequently went to New Jersey in the latter part of the spring of 1918 and was shown the property by the defendant. His attention was directed to its relation to manufacturing plants on both sides of the river, and the plan of the owner was stated to him which included the construction of streets, the building of sidewalks at the expense of the lot owners, and the erection of houses as they might be needed by purchasers of the lots. He also stated the plan was to have a line of street cars, a bank, and a police court, and that the government was about to erect a large manufacturing plant in the neighborhood. The plaintiff afterward bought lot No. 12 in block 21 of the plan; the price for which was $400. This amount was paid in five or six different payments through a period of some months, and when the last payment was made the purchaser received a deed for his lot. It was alleged by Gregor that when the negotiation was in progress, the defendant said to him that as soon as he would pay for the lot and have a deed "it wouldn't make any difference what bank I went to with it, they would give me my money." A part of the defendant's contract was to give to each purchaser of a lot the obligation of a corporation of the State of

New York, known as the "Land Value Refunding Company" guaranteeing to the purchaser the return of an amount equal to the purchase money in ten years, if the purchaser so demanded. A guaranty of this corporation was given to the purchaser at the time he received his deed on April 11, 1919. It was this arrangement which the defendant said was the only statement or agreement with reference to rescission of the conveyance and return of the money. Much evidence was introduced, showing the circumstances of the sale of lots to other persons in which there was a repetition in substance of the statements alleged to have been made to Gregor, but they were not in Gregor's presence, nor was it alleged that they were an inducement to the contract made by him. At the close of the Commonwealth's evidence a request was made for instruction to the jury that the Commonwealth's evidence did not disclose a case of larceny and that the defendant should be acquitted. This the court refused. Criticism is not made in the appellant's brief of the correctness of the general instruction given to the jury with reference to the offense charged. It is complained, however, that there is no evidence to show that the money was paid to the defendant through such artifice or trick as would constitute larceny. It is an indispensable element of larceny that the property be taken without the will of the owner and the cases relied on by the Commonwealth are not contrary to this well-known principle. There are instances where personal property has been delivered to another for a special purpose and where there was no intention of passing the title, where the courts have held that although there was a voluntary delivery to the defendant, there was no intention that he should acquire the right of disposal; as in the case of a barmaid who parted with the possession of money in a transaction involving the making of change where it was held she was induced to do so by a trick: 15 Cox CC 345; or where one is given a bill in payment of a debt of less amount in expectation of receiving change which is not

returned: Com. v. Lannan, 153 Mass. 287; or where one obtained money in change for a $50 Confederate bill after the close of the Civil War on the supposition that the note received was money: Fleming v. State, 13 Ind. 149; in which cases there was no intention on the part of the person injured to part with his property. But where the intention was to transfer the title of the chattel as well as the possession, the transaction is not larceny however fraudulent the conduct of the person so acquiring it may be. The delivery of a valuable thing to another induced by fraudulent representation may amount to the obtaining of property by false pretenses, but that is a different offense. It may be that the culpability of the accused is as great in one case as the other, but the law has made a distinction which it is the duty of courts to observe. Larceny is a felony of high grade and subject to severe penalty. The obtaining of property by false pretenses is a misdemeanor and subject to a less serious penalty. It is the duty of the court to apply the law to the facts without so confusing the offenses that it may be uncertain whether the jury convicted of larceny or of false pretenses. It is a well-established principle of the law, where not modified by statute, that when the owner intended to part with the property in the thing delivered, the transaction is not larceny even though fraudulent means may have been used to induce him to part with it, for he delivered the possession absolutely and possession was taken with the understanding that the one so receiving might apply it to his own use: Lewer v. Com., 15 S. & R. 93; Com. v. Eichelberger, 119 Pa. 254; Com. v. Dehle, 42 Pa. Superior Ct. 300; 2 Bishop C. L., section 817; Zink v. People, 77 N. Y. 114; Kellogg v. State, 26 Ohio State 15; Loomis v. People, 67 N. Y. 329. In such case there was no trespass. A trespass is an element of larceny. It will not do to say that because fraud entered into a contract and that therefore the contract might be avoided the perpetrator is guilty of larceny. On such an interpretation of the law all deceptions

used in the acquisition of property would make the wrongdoers felons, and this felonious intention must be chargeable to the accused as a fixed purpose at the time of the transaction. The willingness of jurors untrained in legal distinctions to attribute fraudulent motives because of the untoward results of enterprises makes it necessary that the distinctions of the common law or of the statutes be correctly applied to avoid the result that criminal justice may be applied on general principles rather than according to law. It is not now necessary to consider what the character of the defendant's conduct was in the transaction involved in this case beyond the inquiry whether it amounted to larceny. It may be that his statements of what was to be accomplished in the development of his property were intentionally untrue, but it does not follow that his conduct was felonious. Giving to the Commonwealth's evidence the view most favorable to the prosecution, it cannot be doubted that Gregor intended to buy the lot. He was on the ground; he inspected the premises and the vicinity, and selected the particular lot which he desired; he paid for it in installments. This appears from his own evidence as follows: "Q. Why did you go down then and see the lots? A. Because I thought there would be shops there, and I would buy a lot and build there. Q. Well, you found that there were no shops there, you say? A. No, not there by the lots. There were some farther away; a little farther away. Q. Then after you had inspected the property and the neighborhood, you then signed your contract and paid your money? A. Yes, sir, at his office. Q. Now when you paid your money to Mr. Von Foerster, what did you pay it for? A. For the lot. Q. And you expected to get a deed, and did get a deed for it in return? A. Yes, sir." The fact is prominent through his testimony that he bought a lot and it is clear that he intended the money to be the consideration therefor. We do not find a basis for the inference that any element of trust entered into the transaction. Having acquired his deed and the con-

tract of the guaranty company, he recognized the fact that he was the owner of the property.  It is not to be assumed that he understood he was to receive a title to the lot and at the same time have a right to the return of his money, and the acceptance and retention of the deed for more than a year without complaint is evidence of his understanding.  The facts lead us to no other conclusion therefore than that Gregor paid his money to the defendant as the consideration for a parcel of land which he had seen and which he intended to buy.  No other legal inference can be drawn from that state of facts than that the title to the money paid for the land passed to the defendant or to the corporation which he represented.  In such circumstances whatever else may have been in the transaction, there was a lack of evidence of the taking of property against the will of the owner which is involved in the felony charged against the defendant.  He was therefore entitled to the instruction requested in the defendant's fifth point that under all the evidence in the case the verdict should be "Not Guilty."

The judgment is reversed and the defendant is discharged from his recognizance.